UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

MARY E. VEZINA, )
 )
        Plaintiff, )
vs. ) 3:10-cv-123-RLY-WGH
 )
DILLARD DEPARTMENT STORE, )
 )
        Defendant. )

**Entry Discussing Pending Motions
and Directing Entry of Final Judgment**

Mary E. Vezina ("Vezina") filed this civil action against her employer, Dillard's, Inc., d/b/a Dillard Department Store ("Dillard's"), alleging that she has been subjected to discrimination based on her age and disability and that she was retaliated against because she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Dillard's denies these allegations and seeks resolution of this matter through summary judgment.

For the reasons explained in this Entry, Dillard's motion for summary judgment [39] is **granted.**

As a preliminary matter, Vezina's brief in opposition to summary judgment is accompanied by a motion in opposition. This motion [40] is unnecessary to file a response to Dillard's motion for summary judgment and is **denied** as such. To the extent Vezina seeks summary judgment in her favor based on her motion in opposition, that request [40] is denied because she has not shown that she is entitled to that relief.

### I. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is

genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no Agenuine@ dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

If the moving party, in this case Dillard's, alleges that there is no evidence to support an essential element of the respondent's claim, the moving party need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the moving party need only show that the respondent, who bears the burden of proof, has adduced no evidence to support an essential element of his case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, (1986).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by her own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y & H Corp.,* 380 F.3d 219, 222 (5th Cir. 2004) (*citing Celotex*, 477 U.S. at 324). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

## II. Material Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Vezina as the non-movant, are undisputed for purposes of the motion for summary judgment:

1. On February 19, 2007, Vezina was hired as a sales associate making $10 an hour. When Vezina was first hired, she went through an orientation process and was provided with a copy of the company's rules and procedures.

2. Vezina was assigned to sell ladies apparel in the traditional department of the store. Her job duties involved waiting on customers and keeping the merchandise organized. Pam Marz was the manager of the ladies apparel department at that time.

3. Dillard's applies a "Sales Per Hour Program" which utilizes totally objective criteria for determining rates of compensation for its sales employees. All employees, including Vezina, were advised that their sales production plays an important part in their performance evaluation and directly determines their rate of pay. On March 4, 2007, Vezina was provided with documentation which

outlined her personal sales per hour (SPH) standard requirements and raise goals.[1]

4. On June 15, 2007, Vezina was advised that she had exceeded her SPH raise goal, and thus would receive a 15% pay increase to $11.50 an hour. Vezina testified that she also won a television set as a result of her opening "58 or 59" new customer credit cards.

5. Marz stated that several of Vezina's coworkers had come to her with complaints about Vezina's failure to do her fair share of the work. They stated that she took sales that did not belong to her by just standing at the cash register. Vezina admitted there was "jealousy and friction" with her coworkers as a result of her early success with the company.[2]

6. Vezina testified that store manager Sean Conover came to her in August of 2007 and asked if she would consider transferring from ladies apparel to the lingerie department because "for some reason they couldn't keep people in that department." Vezina voluntarily accepted this offer and on August 26, 2007, she was reassigned to the lingerie department. Debra Bright was the manager of the lingerie department.

7. Vezina claims that in October of 2008 a new employee named Melinda Richardson filed a complaint with Store Manager Conover about the negative attitude of Vezina and a coworker named Pam Negron. Vezina claims Richardson made up this negative attitude story because she wanted to work in a different department. As a result of Richardson's complaint on October 4, 2008, Vezina was issued a verbal disciplinary notice by Conover which was documented. Vezina did not sign this disciplinary action documentation. See dkt 39-6.[3]

8. On October 8, 2008, Vezina resigned her employment at Dillard's to take a "much higher" paying job at Macy's in the jewelry department. However, she claimed that Dillard's District Manager's office called her and convinced her to reconsider her resignation. Vezina stated that she was told that there were going to be major changes at the Evansville Dillard's and that things were

---

[1] Vezina presents the following statement as a fact in dispute: "Dillard's formula for determining rates of compensation are not fair and can be manipulated by management." This statement is insufficient to create a material fact in dispute, however, because it is not supported by admissible evidence.

[2] Vezina argues, "I do not believe that Pam Marz received any complaints on my stealing sales more than she received on other employees and her 2010 letter refers to a 2007 incident." In support of this speculative argument, Vezina cites to an unauthenticated letter purportedly signed by Pam Marz. Even if the letter were admissible evidence, its contents are insufficient to establish a material fact in dispute. Pl.'s Exh. 21 at dkt 41-22.

[3] Vezina states, "I do not agree with the statement that Malinda Richardson complained about my negative attitude and she was terminated because of not meeting Dillard's expectations." Again, this statement is insufficient to establish a material fact in dispute because it is not supported by admissible evidence.

"going to be straightened out." Vezina agreed to return to her job at Dillard's and shortly thereafter Larry Runge replaced Conover as the manager of the store.

9. On March 1, 2009, Vezina received a second raise to $13.25 an hour as a result of her once again exceeding her SPH raise goal.

10. Prior to March 1, 2009, Vezina had complained to Runge that her immediate supervisor, Debra Bright, was "stealing sales" and "not doing bra fittings." She also stated that she was tired of dealing with Bright because she "pitted one person against another." Runge asked Vezina if she wanted to transfer to the petites department. Vezina accepted Runge's offer and on March 1, 2009, she was reassigned to the petites department.

11. In July of 2009, Vezina reported that her shoulder began hurting. Her doctor put restrictions on her of lifting no more than five pounds. On August 2, 2009, as a result of her restrictions, Runge transferred Vezina to the accessories department. Vezina testified that part of the benefit of working in the accessories department was the opportunity to work in Coach handbags two days a week. Vezina's immediate supervisor in the accessories department was Jamie Tapp.

12. On January 10, 2010, associate Sandy Vore reported to Dillard's management that Vezina was complaining about being assigned to work in the jewelry department.[4] Vezina admitted that she did complain to her coworkers that she thought the jewelry department "sucks" and that she did not want to work in jewelry. Vezina was going to be disciplined by Dillard's for her negative attitude.[5] However, before this discipline could occur Vezina injured her foot on January 12, 2010 when she accidentally kicked a display fixture. That same day Tapp spoke with Vezina about this accident and completed an accident report. As a result of this accident Vezina left her shift approximately 2 hours early.

13. On January 13, 2010, as a result of kicking the display fixture, Vezina went to the Deaconess Urgent Care in Newburgh, Indiana, where she was diagnosed with a left foot contusion. Her doctor indicated she could return to work with

---

[4] Vezina states "I do not agree that Sandy Vore complained on January 10, 2010, because her letter mentioned an issue that occurred on January 10 in the past ten[se]." See Pl.'s Exh. 4 at dkt 41-5. This argument is not sufficient to establish a material fact in dispute. It is not uncommon for someone to report an incident in the past tense.

[5] Vezina states, "I do not agree that I was going to be disciplined by Dillard's for my negative attitude. There is no proof that this was going to happen and there would have been no reason for it." This argument is not supported by admissible evidence. To the contrary, the affidavit of David Kemp states that Vezina was going to be disciplined by Dillard's for her negative attitude related to Vore's January 10, 2010, report. Def.'s Exh. 26 at dkt 39-27.

restrictions of lifting no more than 10 pounds, no climbing of ladders or stairs, and walking limited to whatever she could tolerate.

14. On January 15, 2010, Assistant Store Manager David Bray, Runge and Tapp counseled Vezina regarding her unprofessional behavior, specifically her repeated complaints that the jewelry department "sucks." Vezina was reminded that she had previously been counseled, both formally and informally, concerning eliminating her negative attitude, and was told that this was her final opportunity to correct her behavior in the future. According to Vezina, Tapp told her during this meeting that "her views spread like cancer." Vezina believed this statement was "really hurtful" considering she had dealt with skin cancer the previous year.

15. On January 20, 2010, Vezina's doctor altered her restrictions to performing limited squatting or kneeling, being allowed to sit or stand at will, no climbing of ladders or stairs, walking limited to eight hours, and being allowed to wear comfortable shoes.

16. On January 20, 2010, Vezina filed a complaint with the Equal Employment Opportunity Commission. She alleged that she was being discriminated against by Dillard's because of her age and an undefined disability. She also alleged that Dillard's had a policy that no employee was to work more than two nights a week, yet she had been scheduled to work three nights the following week. EEOC Charge of Discrimination, dkt. 41-2.

17. However, the last week of January was inventory week at Dillard's, and numerous employees worked more than two evening shifts that week. Vezina was only scheduled to work two evening shifts.

18. On January 25, 2010, Vezina's doctor altered her restrictions again to include a new requirement that she only perform "seated work." Runge then assigned Vezina to sit down work which required her to use a razor blade to clean old price stickers off plastic merchandise markers. Those plastic merchandise markers were known as tombstones. Vezina claims she was forced to do this work in one of the back rooms of the executive office, and overheard two managers using "bad language" when they were talking to each other. Vezina does not assert this bad language was ever directed at her. She testified that scraping the tombstones was extremely difficult without cutting one's fingers. Vezina argues that she should have been given a different sit down job, such as sitting on a chair in the fragrance department giving away samples or answering telephones in the customer service department. Vezina scraped the tombstones for one week before she returned to her regular job in accessories. Once back at her regular job, she was permitted to take breaks as required by her restrictions.

19. On February 2, 2010, Vezina was disciplined for violating Dillard's attendance policy. The "Absences" section of Dillard's attendance policy states that employees who are going to be absent from work must call at least one hour prior to their scheduled time to arrive. Dkt. 39-2 at p. 4. Vezina was disciplined because she was scheduled to work at noon but did not report to her manager that she was going to be absent until 11:25 A.M. Vezina was warned that her failure to follow this policy in the future would result in her discharge.[6]

20. By May 5, 2010, Vezina's doctor released her to her regular job without any restrictions. Def.'s Exh. 22 at dkt. 39-23. Vezina had a follow-up appointment with Dr. Paul D. Alley on August 31, 2010, he found that Vezina has no permanent partial impairment rating related to the contusion of her foot. Def.'s Exh. 23 at dkt. 39-24.

21. Vezina claims that on June 8, 2010, Assistant Store Manager Kemp approached her and told her that if she did not sell $40,000 worth of product before July 1 that she "would be in trouble."

22. On August 10, 2010, Vezina was informed that she was receiving a pay reduction to $11.95 per hour because she was not meeting her sales per hour goals.

23. On November 3, 2010, her sales per hour went back up, and she was given a raise to $13.15 per hour.

24. Vezina continues to this day to be employed by Dillard's.

### III. Discussion

#### A. Age Discrimination Claim

Vezina alleges that Dillard's discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).

To prove discrimination in violation of the ADEA, Vezina must establish that Dillard's subjected her to an adverse employment action because of her age. *See Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). "Adverse employment actions for purposes of the federal antidiscrimination statutes generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job

---

[6] Vezina states: "The disciplinary notice given to me on February 2, 2010, was not proper because I gave management a note from my doctor as required by the personnel manual and it was ignored." This statement is insufficient to establish a material fact in dispute. Vezina admitted at her deposition that she did not give Dillard's timely notice of her absence. The fact that she had a doctor's appointment is irrelevant. See Vezina Depo. at dkt. 39-39 at p. 139.

conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 449, ___ (7th Cir. 2011) (citing *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002)). Vezina must show that "but for" her age the adverse action would not have occurred. *Wojtanek v. District No. 8*, 435 Fed.Appx. 545 (7th Cir. 2011) (citing 29 U.S.C. § 623(c)(1); *Gross v. FBL Fin. Servs.*, *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009) (holding that age-discrimination claim against employer under 29 U.S.C. § 623(a)(1) requires showing of "but for" causation)).

Vezina's claim of age discrimination must fail because she has not presented any evidence which would allow a jury to reasonably conclude that Vezina was subjected to an adverse employment action, much less that age was the "but for" cause of any changes in Vezina's employment.

There is no evidence that Dillard's tried to terminate Vezina's employment because of her age by increasing her sales quotas or that Vezina is paid differently because of her age. Instead, the evidence reflects that Dillard's Sales Per Hour Program is applied to all non-commission associates for determining rates of compensation irrespective of their age and is based on objective criteria. See Affidavit of David Kemp, Def.'s Exh. 26.

Vezina received three formal disciplinary notices.[7] These disciplinary actions did not result in a tangible job consequence and they did not affect the terms or conditions of Vezina's employment. There is no evidence that the disciplinary notices were issued because of her age. Nor has Vezina presented any evidence that Dillard's work rules or policies were implemented more stringently against her or older employees as compared to younger workers.

Vezina's repeated transfers to different departments at Dillards did not constitute an adverse employment action. Vezina testified that she either voluntarily accepted each transfer that was offered to her by Dillard's, or was required to transfer based upon the medical restrictions that had been placed upon her by her doctors. Specifically, Vezina's last transfer to the accessories department was the result of her injuring her shoulder and needing to work in a department that would not expose her to violating her lifting restrictions. Likewise, Vezina was transferred to a position scraping price tags off of tombstones for five days because she needed a job where she could sit down all day. Vezina's pay rate after each of these transfers remained the same. There is no evidence

---

[7] First, on October 4, 2008, Vezina received a formal verbal disciplinary notice for having a negative attitude. Rule 10 of Dillard's Associate Work Rules states that "associates must exhibit positive behavior toward the job, management, supervisors and co associates in their action and speech." The notice reflects that Vezina was found to be talking with other associates in her work center regarding negatives of the area and her sales manager in violation of rule 10. Second, Vezina received a formal disciplinary notice for having a negative attitude on January 15, 2010. Dillard's determined that Vezina is telling her coworkers that the department she was working in "sucks" was a violation of Rule 10. Third, Vezina received a formal disciplinary notice for violating Dillard's Attendance Policy. Dillard's requires its employees who are going to be absent to call in at least one hour prior to their scheduled start time. Vezina was disciplined in February, 2010, for calling in less than one hour before her shift.

that Vezina's age had anything to do with her transfers to different departments. Nor is there any evidence in support of Vezina's vague argument that she was passed over for placement in better positions because of her age. For example, Vezina argues that she received less favorable night schedules than younger employees. In support she provides what appear to be work schedules from January 20, 21, 27, and 28, and February 5, 6, and 7, 2011. It is not clear why her schedule on these particular days should be considered worse than her co-workers and, in any event, pinpointing a few days in which Vezina did not approve of her schedule does not constitute an adverse employment action.

Finally, Vezina argues that she can prove that she was discriminated against because she has a sworn affidavit from Jana Taylor which states that Taylor was terminated because of her age and a declaration from Dewey Jones regarding the discriminatory issues that are occurring in the store. See Pl.'s Exhs. 12 and 13 at dkt. 41. Vezina misstates both the substance and effect of these submissions. First, the submissions are letters and not sworn affidavits or declarations. Neither letter purports to be true and correct, see 28 U.S.C. § 1746. In addition, Mr. Jones' letter does it comply with Rule 56(c)(4), in that there is no indication that the author is competent to testify on the matters stated and neither letter would be admissible in evidence.

In summary, Vezina's contentions are insufficient to establish a genuine issue of material fact. Because Vezina has not provided any evidence upon which a reasonable jury could conclude that she suffered an adverse employment because of her age, summary judgment must be entered in favor of Dillard's on this claim.

### B. Retaliation

To prove retaliation in violation of the ADEA, Vezina must show that she engaged in statutorily protected activity, that she suffered a materially adverse action, and that the two are causally related. *Barton,* 2011 WL 4921603, at *6 (citing *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 612 (7th Cir. 2001). Under the ADEA retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). Thus, the issue is whether Vezina suffered a materially adverse action causally linked to her complaints of age discrimination.

"The standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim, but the action must be severe enough to dissuade a reasonable employee from exercising statutory rights." *Barton,* 2011 WL 4921603, at *6 (citing *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008)). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993).

Vezina's theory of retaliation is undeveloped and unsupported. See dkt 41 at page 8. Vezina appears to assert that she was retaliated against for filing a charge of

discrimination with the EEOC on January 20, 2010. Dillard's argues that there is no evidence of a connection between Vezina's EEOC complaint and the actions of which she complains. While temporal proximity between the protected activity and the action taken in retaliation for that activity is one consideration in finding a causal connection, the Seventh Circuit has repeatedly stated that "suspicious 'timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim.'" *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (*quoting Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007)).

Vezina has failed to identify any materially adverse action she suffered as a result of filing her complaint with the EEOC. Her speculation to the contrary is not sufficient to survive summary judgment. Vezina argues that the manager did not read the top ten sales list when Vezina was on it; she was not thanked for catching a shop lifter; and she is followed by Mike Marz from store security. There is no evidence of a causal connection between these circumstances and the filing of Vezina's EEOC complaint. Further, these actions would not be severe enough to dissuade a reasonable employee from exercising their statutory rights.

Similarly, Vezina argues that she was assigned to work stations where it is harder to obtain sales quotas. Vezina has been working in the accessories department since August 2, 2009, prior to her filing a complaint with the EEOC. There is no evidence that Vezina's work assignments are a result of her filing a complaint with the EEOC. For example, there is no evidence that Dillard's raised the sales quotas for all employees at the store solely to retaliate against her for filing an EEOC complaint. Nor is there any evidence that a younger woman named Amy is assigned to work in the Coach handbag section more than other employees out of retaliation for Vezina filing an EEOC complaint. Finally, there is no evidence that Vezina is required to work alone more than her coworkers.

### C. Disability Discrimination Claim

The Americans with Disabilities Act (ADA) prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The type of "major life activities" that must be substantially limited to fall under the purview of the ADA include, but are not limited to: caring for oneself, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2); *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 2011 WL 4349395, **3-4 (7th Cir. 2011).

Vezina's ADA claim is summarily rejected. As Dillard's points out, there is no evidence that Vezina is disabled as defined by the ADA or that Dillard's regarded her as having a disability. There is also no evidence that Dillard's took an adverse action against her because of her disability. Because Vezina fails to produce any evidence in support of an essential element of her case for which she would have the burden of proving at trial,

summary judgment shall enter in favor of Dillard's on Vezina's claim of discrimination under the ADA.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Plaintiff Vezina has not identified a genuine issue of material fact as to her claims in this case, and Dillard's has shown that it is entitled to judgment as a matter of law as to each of Vezina's claims. Dillard's motion for summary judgment [39] is therefore **granted**.

Vezina's motion to appoint counsel [64] is **denied**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 1/06/2012

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana